TOWN OF SENATOBIA *v.* DEAN.

(Division B.  April 14, 1930.)

[127 So. 773.  No. 28595.]

**E. D. Dinkins,** of Senatobia, for appellant.

**J. F. Dean,** of Senatobia, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Tate county, to recover damages for an injury received by appellee in falling into an open storm sewer, maintained by appellant on one of its streets; the ground of the action being that appellant negligently

permitted the storm sewer to remain uncovered. There was a verdict and judgment in favor of appellee in the sum of five hundred dollars and from that judgment appellant prosecutes this appeal.

The court, at the request of appellee, directed a verdict in his favor on the question of liability; and refused the request of appellant for a directed verdict in its favor. That action of the court is relied on by appellant as the principal ground for the reversal of the judgment. Other alleged errors are assigned and argued, but they are so related to the main question that its decision necessarily solves the minor questions.

Strayhorn avenue and Panola street, in the town of Senatobia, intersect each other; the former running east and west, and the latter north and south. The town had caused to be constructed an opening into the concrete gutter at the northwest corner of the intersection of the two streets. This opening was into an underground storm sewer that carried off the surface waters of the streets and sidewalks, and was sixteen by twenty-two inches inside measurement, and about thirty inches deep. It was covered by an iron grating, weighing from fifty to seventy-five pounds, which was held in position by its own gravity. This opening into the storm sewer was on the west side of Panola street, at the east end of the sidewalk on the north side of Strayhorn avenue, and in a direct line of travel for pedestrians using Strayhorn avenue.

Between six and seven o'clock on the evening of November 29, 1928, the appellee was going north, in an automobile, on Panola street. Near the northeast corner of the intersection of that street with Strayhorn avenue he got out of the car, walked west across Panola street, to the northwest corner of the intersection of those streets, and while in the act of stepping from the gutter to the sidewalk on Strayhorn avenue, fell into the opening of the storm sewer, the iron grating for the opening having been removed therefrom, and was injured. He was helped out of the opening by two persons, and was unable to

walk. The evidence tended to show that his injuries were rather serious.

The evidence showed, without substantial dispute that the injuries arose out of a conflict of authority between the town of Senatobia and the state highway department. Under the authority of chapter 255 of the Laws of 1914, section 8465, Hemingway's Code of 1927, with the consent of the town of Senatobia, the highway department had taken over the construction and maintenance of Panola street, as part of its system of state highways. That statute provides as follows: "Any public highway being constructed, improved and maintained under the provisions of chapter 149 of the Acts of 1910, or under chapter 257 of the Laws of 1912, or under any of the various methods of building good roads authorized by law of the state of Mississippi, where the same shall run or extend into or through any incorporated municipality within the districts operating under said act may be constructed, improved and maintained the same within as without the corporate limits of said municipality; provided, however, that with the consent of and in conjunction with the commissioners provided for in said act the said municipality may, out of its own funds, add such street crossings, or make improvements, such as grading, culverts, graveling or other improvements as it may desire. Provided the mayor and board of aldermen shall, by an order, spread upon their minutes consent for the work to be done by the commissioners." '

The town has a marshal and a street commissioner. R. W. Floyd, at the time of appellee's injury, and for some time theretofore, was in charge of the state highway, of which Panola street was a part. It was his duty, acting for the state highway department, to keep in repair the section of highway of which Panola street was a part. The openings in the iron grating that covered the well entering the storm sewer were not sufficiently large to care for water in time of rains. The result was that the water would accumulate at that point to such an extent as to overflow and damage the street. In order to pre-

vent this, Floyd, representing the state highway department, was in the habit of removing the iron grating when a rain was threatened, and had done this many times—perhaps for a year—before appellee was injured. This custom of Floyd's was known to the marshal and to the street commissioner of the town; and the marshal, recognizing the danger to pedestrians because of the opening, had reported the matter to the street commissioner, and urged him to have the municipal authorities take some action in reference to it. However, no action was taken. The town authorities appear to have proceeded on the theory that the authority of the highway department in the matter was paramount to theirs.

The evidence showed that Floyd, representing the state highway department, about an hour before appellee was injured, removed the iron grating from the storm sewer opening, on account of a threatened rain—he testified that this was his custom. There was no conflict in the evidence as to the knowledge of the municipal authorities of this custom of Floyd's. Therefore, the question is: Who had the controlling authority with reference to the construction and maintenance of the storm sewer in question, the state highway department or the municipality?

The facts in the present case are different from those in the cases of Tishomingo County v. McConville, 139 Miss. 589, 104 So. 452; and Atkinson v. Town of Decatur, 131 Miss. 707, 95 So. 689. Nevertheless, the principles laid down in those cases are controlling in favor of appellee's position in the present case. In short, it was held in those cases that chapter 255 of the Laws of 1914, section 8465 of Hemingway's Code of 1927, did not authorize municipalities to surrender entire jurisdiction over their streets to any other authority. In the Atkinson case the court held that a municipality was not divested of all control over one of its streets which had been constructed, and was being maintained, by the county under the authority of that statute. In that case the town of Decatur was sued for an injury caused by a defect in a bridge on one of its public streets. The county

had taken over the construction and maintenance of the street on which the bridge was located, by authority of the statute. The court held that notwithstanding this, the municipality could not escape liability for the defective bridge.

Under chapter 201 of the Laws of 1924, section 6766, Hemingway's Code of 1927, every municipality constitutes a separate road district, and section 3338, Code of 1906, section 6774, Hemingway's Code 1927, confers on municipalities full jurisdiction over their streets, sidewalks, sewers, and parks, with authority "to open and lay out and construct the same; to repair, maintain, pave, sprinkle, adorn, and light the same."

Construing those statutes together with chapter 255, Laws of 1914, section 8465, Hemingway's Code 1927, we are of opinion that a municipality has no authority to surrender, either to a county or to the state highway department, any jurisdiction or authority which would conflict with its duty to keep its streets, alleys, and sidewalks, including its gutters and storm sewers, in a reasonably safe condition for the traveling public; and where either the county or the state highway department undertakes to interfere with that duty, the municipality is authorized and required to take the necessary steps to assert its superior authority and jurisdiction.

Applying that principle to the case in hand, the town of Senatobia, when it learned of the custom of the employee of the highway department of removing the covering to the storm sewer opening, which resulted in the injury to appellee, was under the duty to take the necessary legal proceedings to stop the practice; and, failing to do that, is responsible for the result.

Affirmed.